Randal Keith KIPER, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000768–MR.

Supreme Court of Kentucky.

Nov. 21, 2012.

As Modified on Denial of Rehearing April 25, 2013.

Karen Shuff Maurer, Assistant Public Advocate, Department Of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Daryl Havey, William Robert Long, Jr., Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

Appellant, Randal Keith Kiper, appeals as a matter of right from a judgment of the Jefferson Circuit Court convicting him of attempted murder, two counts of first-degree assault, one count of first-degree wanton endangerment, and of being a first-degree persistent felony offender. He received a sentence totaling seventy years' imprisonment.

Appellant argues on appeal that his convictions for both attempted murder and first-degree assault, resulting from the shooting of victim Tim Burton, constitute a double jeopardy violation. Our review of that argument requires us to contrast the constitutional protection against double jeopardy found in the Fifth Amendment of the United States Constitution and the statutory restraint embodied in KRS 505.020 against prosecutions of multiple offenses that arise out of a single course of conduct. In light of the particular facts of this case, we agree that Appellant's convictions for both attempted murder and first-degree assault for the same shooting resulted in a double jeopardy violation of KRS 505.020.

Appellant's remaining arguments may be characterized as allegations of prosecutorial misconduct. They contain the following claims: 1) that during his voir dire examination of the jury, the prosecutor misstated the law about what facts the Commonwealth must prove "beyond a reasonable doubt" in order to obtain a conviction; 2) that during his opening statement the prosecutor improperly vouched for the credibility of victim Tim Burton; 3) that the prosecutor improperly suggested that Appellant was guilty merely because he had been indicted by the grand jury; and 4) that the prosecutor improperly "testified" during his cross examination of Appellant. For the reasons stated below, we conclude that none of these arguments establish reversible error.

As a result of the statutory double jeopardy violation, we reverse Appellant's conviction for first-degree assault and remand for entry of a new judgment that excludes the reversed conviction.[1] We affirm the remainder of his convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict, the evidence established the facts as follows. In November 2009, Burton was riding as a passenger in the front seat of his car, which was being driven by his mother, Christine Saylor. His nephew, one-year old Keyvin, rode in the back seat.

Just after they stopped at the curb in front of Keyvin's mother's residence, Appellant in his white pickup truck pulled up alongside the Burton vehicle. Burton was acquainted with Appellant. Appellant then pointed a handgun through the open window of his truck at Burton, and fired several shots in rapid succession. Burton was struck seven times. As Appellant drove away he fired one more shot, which

---

1. It is worth noting that because the judgment provided that the reversed first-degree assault conviction was to run concurrently with the other first-degree assault conviction, his total sentence of seventy years remains unaffected.

struck Saylor's spine and left her paralyzed for life. At the scene, and again at the hospital, Burton named Appellant as the assailant.

As a result of the shooting, Appellant was indicted on three counts of attempted murder; three counts of first-degree assault; one count of first-degree wanton endangerment, and of being a first-degree persistent felony offender (PFO). Appellant's defense was that he was not at the scene, and he presented alibi witnesses who placed him elsewhere at the time of the shooting. Nevertheless, the jury convicted him of attempted murder for shooting at Burton, one count of first-degree assault for the shooting of Burton, one count of first-degree assault for the shooting of Saylor, one count of first-degree wanton endangerment for endangering Ferguson, and of being a first-degree persistent felony offender.[2]

The jury's PFO enhanced sentencing recommendation totaled 100 years; however, pursuant to the sentencing cap contained in KRS 532.110, the trial court modified the jury's sentencing recommendation to the statutory maximum of seventy years. As modified, the trial court sentenced Appellant to forty-five years for the attempted murder of Burton; twenty years for each of the two first-degree assault convictions (Burton and Saylor); and five years for the wanton endangerment conviction (Ferguson). The assault convictions were ordered to run concurrently with each other, but consecutive to the forty-five-year sentence for attempted murder and consecutive to the five-year sentence for wanton endangerment,[3] for a total of seventy years' imprisonment.

This appeal followed.

## II. APPELLANT'S CONVICTIONS FOR BOTH ATTEMPTED MURDER OF BURTON AND FIRST-DEGREE ASSAULT OF BURTON VIOLATE KRS 505.020(1)(b)

We first address Appellant's contention that a double jeopardy violation occurred as a result of his convictions for both attempted murder and first-degree assault for the shooting of Burton. We begin by noting that although Appellant failed to raise this issue at trial, "the constitutional protection against double jeopardy is not waived by failing to object at the trial level." *Walden v. Commonwealth,* 805 S.W.2d 102, 105 (Ky.1991)(*overruled on other grounds by Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996)). Accordingly, Appellant's constitutional double jeopardy argument is properly raised for our review. It is important to note that this rule is premised upon the *constitutional* stature of the right, and as further discussed below, we ultimately resolve this issue upon *statutory* grounds. Nevertheless, review of the unpreserved claim of a violation of statutory double jeopardy is proper upon application of the palpable error rule, *see* RCr 10.26.[4]

---

2. Ferguson was near the Burton vehicle when Appellant began shooting. Appellant was acquitted of the charge of first-degree assault against Keyvin.

3. At the request of the Department of Corrections, the trial court entered an Amended Judgment of Conviction and Sentence to reflect the minimum ten-year sentence for an enhanced sentence of first-degree wanton endangerment. This did not, however, affect the total sentence imposed.

4. RCr 10.26 provides as follows: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

*Cardine v. Commonwealth,* 283 S.W.3d 641 (Ky.2009) ("Double jeopardy violation resulting when defendant was retried following trial court's *sua sponte* declaration of mistrial on less than manifest necessity constituted palpable error.").

Appellant argues that a double jeopardy violation occurred pursuant to KRS 505.020(2)(a) because he was convicted of both attempted murder and first-degree assault for the Burton shooting. More specifically, he contends that first-degree assault is a lesser-included offense of attempted murder because first-degree assault may be established by the same facts or less than all the facts required to establish the crime of attempted murder. Consequently, he claims both convictions cannot stand.

The Commonwealth responds that there is no double jeopardy violation here because a conviction under both charges does not violate the *Blockburger* same-elements test,[5] which is the test we typically employ to determine if multiple convictions have been improperly imposed for the same conduct in violation of the double jeopardy clause of the Fifth Amendment. *Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky.1996) ("Thus, [after a period of abandonment][6] we return to the *Blockburger* analysis."); *see also* KRS 505.020(1)(a), (2). In the alternative, the Commonwealth argues that there was no double jeopardy violation because some of the shots fired at Burton constituted criminal attempt to commit murder, while other shots represented first-degree assault.[7]

The Commonwealth is correct in its assertion that convictions for both charges do not violate the *Blockburger* test. Nevertheless, for the reasons stated below, we conclude that a double jeopardy violation did indeed occur as a result of Appellant's conviction because, under the circumstances of this case, convictions for both attempted murder and first-degree assault would result in a violation of KRS 505.020(1)(b). KRS 505.020(1)(b) prohibits a conviction for more than one offense when inconsistent findings of fact are required to establish the commission of the offenses.

## A. Double Jeopardy and KRS 505.020

■ The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. Similarly, Section 13 of the Kentucky Constitution ensures no person shall "be twice put in jeopardy of his life or limb" for the same offense. *See Burge,* 947 S.W.2d at 809. In addition to prohibiting retrial for the same crime following a conviction or retrial following an acquittal, the "final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Therefore, a defendant may not be convicted of multiple crimes when there was but one course of conduct and a single *mens rea.*

---

5. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

6. *Burge* overruled all of the following cases: *Walden v. Commonwealth,* 805 S.W.2d 102 (Ky.1991); *Ingram v. Commonwealth,* 801 S.W.2d 321 (Ky.1990); *Jones v. Commonwealth,* 756 S.W.2d 462 (Ky.1988); *Hamilton*

v. Commonwealth, 659 S.W.2d 201 (Ky.1983); *Denny v. Commonwealth,* 670 S.W.2d 847 (Ky.1984); *Hellard v. Commonwealth,* 829 S.W.2d 427 (Ky.App.1992); and *Hall v. Commonwealth,* 819 S.W.2d 39 (Ky.App.1991).

7. As noted below, evidentiary support for this theory is lacking.

KRS 505.020 expresses our statutory structure for analyzing whether multiple convictions for the same course of conduct are permissible as follows:

(1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:

 (a) One offense is included in the other, as defined in subsection (2); or

 (b) *Inconsistent findings of fact are required to establish the commission of the offenses;* or

 (c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

 (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

 (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

 (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

 (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

(emphasis added).

■ Section (1)(a) and Section (2) together represent our codification of the *Blockburger* test, by which the constitutional standard of double jeopardy must be evaluated. In *Blockburger,* the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. Pursuant to this test, "[a] defendant is put in double jeopardy when he is convicted of two crimes with identical elements, or where one is simply a lesser-included offense of the other." *Turner v. Commonwealth,* 345 S.W.3d 844, 847 (Ky.2011).

■ We have previously analyzed whether first-degree assault is a lesser included offense of attempted murder under the *Blockburger* test and concluded that it is not because each of the two crimes contains an element that the other does not. As we noted in *Perry v. Commonwealth,* 839 S.W.2d 268, 272–73 (Ky. 1992), a comparison of the elements of attempted[8] murder[9] and of first-degree

---

8. KRS 506.010 defines "Attempt" as "(1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise required for commission of the crime, he: ... (b) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime. (2) Conduct shall not be held to constitute a substantial step under subsection (1)(b) unless it is an act or omission which leaves no reasonable doubt as to the defen-

assault [10] discloses that a conviction of both crimes would not violate the *Blockburger* test because assault requires that the victim have incurred a "serious physical injury" by use of a "deadly weapon," neither of which is an element of attempted murder. Furthermore, attempted murder requires the intent to cause the death of the victim, which is not an element of first-degree assault. *Id.* at 273. Therefore, we agree with the Commonwealth that under *Blockburger* and *Burge*, there is no violation of the constitutional protections against double jeopardy.

## B. KRS 505.020(1)(b)

While some of our cases seem to imply that the *Blockburger* test is our *exclusive* method for evaluating whether a conviction for one offense necessarily precludes conviction for another offense,[11] that is an over-generalization. While *Blockburger* will most often be the controlling analysis, KRS 505.020(1)(b) presents a seldom-used, but nevertheless, crucial provision for the applicable double jeopardy rule in circumstances such as we review in this case. KRS 505.020(1)(b) provides that a defendant "may not ... be convicted of more than one (1) offense when: ... (b) Inconsistent findings of fact are required to establish the commission of the offenses[.]"[12] As further explained below,

dant's intention to commit the crime which he is charged with attempting."

9. KRS 507.020(1) defines "Intentional Murder" as "(1) A person is guilty of murder when: (a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime[.]"

10. KRS 508.010(1) defines "Assault in the first degree" as "(1) A person is guilty of assault in the first degree when: (a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument[.]"

11. *See, e.g., Taylor v. Commonwealth,* 995 S.W.2d 355, 358 (Ky.1999) ("In *Commonwealth v. Burge,* we reinstated the 'Blockburger rule' as incorporated in KRS 505.020, as the *sole basis* for determining whether multiple convictions arising out of a single course of conduct constitutes double jeopardy.") (emphasis added) (citations omitted); *Barth v. Commonwealth,* 80 S.W.3d 390, 399 (Ky.

2001) ("In *Burge,* we departed from the so-called 'same conduct' test described in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), ... and reinstated the *Blockburger* rule 'as the *sole basis* for determining whether multiple convictions arising out of a single course of conduct constitutes double jeopardy.' ") (emphasis added).

12. The 1974 commentary to KRS 505.020 discusses this subsection as follows: "The second exception to the general proposition is contained in subsection (1)(b). It prohibits multiple convictions for two offenses, one of which requires a finding of fact inconsistent with the requirements for commission of the other. As stated by the drafters of the Model Penal Code: 'decisions are uniformly to the effect that both convictions cannot stand.' To illustrate this exception: D takes the automobile of another without the latter's consent. His conduct *could* constitute a commission of two distinct offenses, one being larceny (which requires an intent to deprive the owner of the car permanently) and the other being 'joy-riding' (which requires an intent to deprive the owner of temporary use of the car). A conviction of both of these offenses could result only from inconsistent findings of fact, i.e., an intent to deprive *permanently* in one and an intent to deprive *temporarily* in the other. The second exception eliminates multiple convictions of this type." [citations omitted] For a discussion of inconsistent verdicts in a different context see *Dunn v. U.S.,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356

and under the particular circumstances present here, it is clear that a conviction for both first-degree assault and attempted murder violates the aspect of double jeopardy defined by KRS 505.020(1)(b)'s inconsistent findings of fact test.

■ A careful analysis of the elements of attempted murder and first-degree assault discloses that in the factual context of this case—that is, where the attack with a deadly weapon is the same act that constitutes the "substantial step" required for the attempt charge—verdicts convicting a defendant for both crimes must necessarily be the result of inconsistent findings of fact by the jury. More specifically, to convict a defendant of attempted murder, the jury must find that he specifically intended during the attack to kill the victim. *See* KRS 507.020, 506.010. On the other hand, and quite inconsistently, for the jury to convict the same defendant of first-

degree assault for engaging in the same course of conduct, it must determine that his specific intent was not to kill, but merely to cause serious physical injury to the victim. *See* KRS 508.010. Therefore, as may easily be seen in the circumstances of this case, to convict Appellant for both attempted murder and first-degree assault, the jury had to conclude that Appellant intended to kill Burton and, at the same instant, intended not to kill him but only to injure him. These inconsistent and mutually exclusive findings of fact regarding Appellant's *mens rea* at the moment he fired the shots at Burton lead precisely to the result that KRS 505.020(1)(b) prohibits. It follows, therefore, that the judgment convicting Appellant for both attempted murder and first-degree assault is a violation of our statutory restraint on double jeopardy.[13] It follows, therefore, that the multiple convictions likewise resulted in a manifest injustice correctable

---

(1932) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.") "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id.* (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir.1925)).

13. Strictly speaking, because attempted murder and first-degree assault are both Class B felonies for sentencing purposes, it is difficult to characterize either as a "lesser included offense" of the other. It is worth noting, however, that in *Perry* and *Hall,* under circumstances similar to those present here, we referred to first-degree assault as a "lesser included offense" of attempted murder for purposes of instructing the jury on the two charges. *Hall v. Commonwealth,* 337 S.W.3d 595, 605 (Ky.2011); *see also Perry,* 839 S.W.2d at 273. More specifically, *Hall* and *Perry* hold that an instruction should be given

on both charges, with first-degree assault being the lesser-included charge, when: (1) the victim received serious physical injuries inflicted by a deadly weapon; (2) the substantial step supporting the attempted murder was the identical infliction of serious physical injuries with a deadly weapon; and (3) the evidence supports both of the alternative theories that the defendant's intent was to either kill the victim or to inflict serious physical injury. *See Hall,* 337 S.W.3d at 604–05; *see Perry,* 839 S.W.2d at 273. As a natural consequence of the holdings in *Perry* and *Hall,* and because it is fundamental that a defendant may not be convicted of both a greater offense and a lesser included offense for the same crime, it follows that when first-degree assault is included in the jury instructions as a lesser included offense of attempted murder, a conviction may not be returned on both charges. *See* KRS 505.020. Indeed, a properly instructed jury, once finding a defendant guilty of the greater offense (attempted murder) would not, as always, even be permitted to proceed to consider the lesser offense. In summary, application of *Perry* and *Hall,* in combination with KRS 505.020, produces an identical result to our KRS 505.020(1)(b) discussion.

as palpable error pursuant to RCr 10.26. *Banks v. Commonwealth*, 313 S.W.3d 567, 571–572 (Ky.2010) (a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence; if the jury instructions do not include factual differentiation between the charges, it is reversible error, even if the error is unpreserved).[14]

### C. The Multiple Shootings Theory

The Commonwealth argues that Appellant's convictions for both offenses are proper because Burton was shot multiple times and thus Appellant's conduct warrants multiple punishments. This theory postulates that some of the gunshots were fired with the intention of causing Burton's death, while others were fired with the intention of causing only serious physical injury.[15] However, the facts in evidence clearly negate that theory.

■ We have previously acknowledged that KRS 505.020 does not bar the prosecution or conviction upon multiple offenses arising out of a single course of conduct when the facts establish that two or more separate and distinct attacks occurred during the episode of criminal behavior. *Welborn v. Commonwealth*, 157 S.W.3d 608, 611–12 (Ky.2005). However, for multiple convictions to be proper there must have been a cognizable lapse in his course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts. *Id.* at 612; *see also Terry v. Commonwealth*, 253 S.W.3d 466, 474 (Ky.2008). The facts in *Welborn* illustrate the principle as follows:

> The defendant shot the trooper three separate times and inflicted three separate wounds. The indictment specifically identifies each action by the location of the wound. Each shot was preceded by a sufficient period of time in which Welborn could reflect on his conduct and formulate intent to commit another act. Welborn first shot the trooper in the right forearm. Evidently, the recoil of the weapon prevented Welborn from immediately shooting again, and the trooper moved to a doorway and sought cover in the next room. As the trooper left the house, Welborn fired again and the officer was struck in the neck. The trooper then made it to his cruiser, removed a shotgun, and pointed it at Welborn who moved to a corner of the house. Welborn fired again and hit the officer for a third time in the shoulder. Evidence was introduced that the three shots resulted in three separate serious physical injuries.

*Welborn*, 157 S.W.3d at 612.

■ The facts in the present case are readily distinguished from *Welborn*. In *Welborn*, the evidence established that the defendant had ample time to pause and

---

14. As an additional consideration, even though attempted murder and first-degree assault involve two separate and distinct forms of *mens rea* which in the usual case could not exist simultaneously, both charges could in good faith be submitted to a grand jury, which in turn might reasonably return an indictment for each crime, as occurred in this case. This is so because the grand jury's decision to return a true bill need not be based upon proof beyond a reasonable doubt, and there may be sufficient evidence to support an indictment for each crime, properly leaving to the petit jury to resolve the matter based upon its view of the evidence. Moreover, KRS 505.020 expressly permits the *prosecution* of both offenses; it simply prohibits a *conviction* for both offenses.

15. The Commonwealth acknowledges that it did not present this argument during the trial court proceedings, and therefore this issue is not properly preserved for our consideration; nevertheless, for completeness we briefly address the issue.

reflect, and reformulate his intention between each shot. This case, to the contrary, involves an uninterrupted drive-by shooting. Because of the rapid rate of the gunfire Appellant directed at Burton, the evidence does not support a reasonable conclusion that some of the shots were fired with the intent to wound while others were fired with the intent to kill. *See Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38–42 (Ky.2011) (Defendant's conduct constituted two separate offenses when he shot a two-year-old child once in the thigh and once in the head.). Consequently, the *Welborn* analysis does not lift this case out from under the bar that KRS 505.0202(1)(b) imposes upon multiple convictions for the same conduct.

### D. Summary

In summation, we reiterate that the *Blockburger* test and its codification in KRS 505.020(1)(a) and 505.020(2) remain the standard by which we shall analyze the *constitutional* concerns implicit in multiple prosecutions for offenses arising out of the same course of conduct. However, KRS 505.020(1)(b) addresses circumstances not covered by *Blockburger* and, therefore, not rooted in the Fifth Amendment of the U.S. Constitution or Section 13 of the Kentucky Constitution. Despite its lack of constitutional luster, the legislative directive embodied by KRS 505.020(1)(b) plainly speaks to the situation presented in this case and clearly prohibits Appellant's conviction for both of the crimes arising from the gunshots directed at Burton.[16]

Having determined that a KRS 505.020(1)(b) double jeopardy violation occurred, our final task is to determine the proper remedy for the error. Appellant contends that the only proper and possible remedy is a new trial. However, we have repeatedly held that "[t]he remedy for these types of double jeopardy violations is to vacate the conviction for the lesser offense." *Lloyd v. Commonwealth*, 324 S.W.3d 384, 391 n. 26 (Ky.2010); *Brown v. Commonwealth*, 297 S.W.3d 557, 562–563 (Ky.2009) ("Given that first-degree fleeing or evading police is a felony and that second-degree wanton endangerment is a misdemeanor, the remedy is to vacate the lesser offenses of wanton endangerment."); *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky.2008) (When a person is improperly convicted of two or more offenses arising "out of a single course of conduct and not requiring proof of a fact which the other does not[,]" the double jeopardy violation is remedied "by maintaining the more severe conviction and vacating the lesser" conviction.).

Because we deem attempted murder to be the more serious of the two crimes, we affirm the conviction and sentence for attempted murder and vacate Appellant's conviction for the "lesser" offense of first-degree assault.[17] Appellant's total sentence of seventy years remains unaffected because the twenty-year sentence for assaulting Burton was to be served concurrently with the twenty-year sentence to served for the assault against Saylor.[18]

---

**16.** Additionally, KRS 505.020(1)(c) provides a similar statutory bar to multiple prosecutions deviating from the *Blockburger* analysis by prohibiting multiple prosecutions where "the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses."

**17.** We designate attempted murder as the more serious of the two because acting with the intent to kill another person is generally considered to more malevolent, and thus more reprehensible conduct than acting with the intent to inflict injury.

**18.** Obviously, the first-degree assault conviction, based upon the shooting of Christine Saylor, is unaffected by this analysis.

## III. APPELLANT'S CONVICTIONS WERE NOT TAINTED BY PROSECUTORIAL MISCONDUCT

Appellant raises several arguments imputing improper conduct to the trial prosecutor, none of which were preserved for appellate review by a contemporaneous objection in the trial court. Accordingly, we review the alleged errors pursuant to the palpable error standard contained in RCr 10.26.

 Under the palpable error standard, an unpreserved error may be noticed on appeal only if the error is "palpable" and "affects the substantial rights of a party," and even then relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26. In general, a palpable error affects the substantial rights of a party "only if it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth,* 160 S.W.3d 744, 762 (Ky.2005). An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a "manifest injustice." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky.2006). Additionally, relief will be afforded if the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Id.*

### A. The Prosecutor Did Not Misstate The Law With Respect To The Commonwealth's Trial Burden

 Appellant first contends that the prosecutor "misstated the law" concerning the facts the Commonwealth must prove beyond a reasonable doubt in order to obtain a conviction.[19] In addressing the Commonwealth's burden in a criminal trial, the prosecutor told the jury:

> The only thing the Commonwealth is required to prove beyond a reasonable doubt are the elements of the crime you get in the instruction from the judge. There'll be thousands of facts that come out on the stand, but the Commonwealth is not required to prove all of those facts beyond a reasonable doubt. Commonwealth is required to prove the elements as set out by the law, which will track the indictment the judge reads[.]

An examination of this statement discloses that the prosecutor was fundamentally correct in his characterization of what the Commonwealth is required to prove beyond a reasonable doubt. It is obviously a correct statement of the law that the Commonwealth is not required to prove every single fact it presents during the entire course of the trial beyond a reason-

---

19. Appellant argues this issue should be reviewed for structural error; however, this claim has no merit. Structural error is defined as "errors 'which are, per se, reversible because they undermine the fundamental legitimacy of the judicial process.'" *Woolfolk v. Commonwealth,* 339 S.W.3d 411, 418 (Ky. 2011) (quoting *Crossland v. Commonwealth,* 291 S.W.3d 223, 231 (Ky.2009)). Among those types of errors which have been found to be structural are: *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); and *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession). Obviously the argument under discussion does not rise to the level of the undermining of the judicial process implicated in these cases.

able doubt in order for a defendant to be found guilty. For instance, in this case there were varying descriptions of the vehicle being driven by the shooter and the vehicle allegedly owned by Appellant at the time. It would be preposterous to suggest that in order to obtain a conviction against Appellant, the Commonwealth was charged with proving the exact make, model, and color of the particular vehicle driven by the shooter, and of the vehicle owned by Appellant, beyond a reasonable doubt in order to submit the case to the jury. Rather, the burden placed upon the Commonwealth is to prove by the evidence beyond a reasonable doubt each element of the crime charged. We find no error in the prosecutor's comment in this regard.

**B. The Prosecutor's Opening Statement Did Not Improperly Comment Upon Burton's Credibility**

■ Appellant next contends that the prosecutor caused reversible error by improperly commenting on the credibility of Burton during his opening statement. Appellant directs our attention to the following comment by the prosecutor, made during his opening statement:

> [A]t the end of the day there is going to be one burning question. Why would Tim Burton get shot, watch his mother paralyzed and one-year-old relative get shot at, and lie about who did it? Why would he lie about who did that and let the real shooter be out on the streets? You know that he wouldn't.

■ RCr 9.42(a) requires the prosecutor in his opening statement to "state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it." Thus, "[t]he only legitimate purpose of an opening statement is so to explain to the jury the issue they are to try that they may understand the bearing of the evidence to be introduced." *Lickliter v. Commonwealth,*

249 Ky. 95, 60 S.W.2d 355, 357 (1933); *see Fields v. Commonwealth,* 12 S.W.3d 275, 281 (Ky.2000). Further, "it is never proper in an opening statement for counsel to argue the case or to give his personal opinions or inferences from the facts he expects to prove." *Turner v. Commonwealth,* 240 S.W.2d 80, 81 (Ky.1951).

From a purely technical viewpoint, it may well be argued that the rhetorical flourish inherent in this statement deviated from the rule. Nevertheless, whether Burton had any reason to lie about who did the shooting, or whether he had a strong motive not to do so, was to become a critical point of the Commonwealth's case. Appellant would suggest that Burton had a motive to falsely identify him as the shooter. The prosecutor essentially alerted the jury to evidence that was to be adduced during the trial.

The substance of the comment simply informed the jury of a factual controversy coming its way. It did not amount to improperly "vouching" for Burton's credibility. In any event, there is no substantial possibility that the prosecutor's statement affected the result, and therefore the lack of palpable error precludes relief. RCr 10.26; *Martin,* 207 S.W.3d at 3.

**C. The Prosecutor's Cross–Examination Of Appellant Was Not Improper**

■ Appellant next claims that the prosecutor engaged in misconduct by "testifying" during his cross-examination of Appellant. During direct-examination, the following exchange occurred between Appellant and his trial counsel:

> Trial counsel: So you know—you're telling the jury—you know of no specific reason that you personally in this time frame would have been accused of a crime as serious as this one?

Appellant: Well, at the time they've been trying—split up me and Vickie [Appellant's girlfriend] for a long time.

On cross-examination, the following response ensued:

Prosecutor: It's your theory to this jury that Tim Burton took six shots, watched his mama get crippled, and thought, man, this is a perfect opportunity to break up you and Vicki. Is that your theory? Is that what you're telling us?

Appellant: I didn't say that. I said that Vicki's sister didn't want us together and it was a controversy. That's what I said.

Prosecutor: And you thought it would be a good time after he got shot six times and watched his mama get crippled and a one-year-old almost eat a bullet to just blame you so they could break you all up? Is that what you're telling us?

The Appellant then claimed that he did not understand the question.

■ We recently reiterated the non-controversial notion that the Commonwealth "is entitled to ... make a reasonable argument in response to matters brought up by the defendant." *Childers v. Commonwealth*, 332 S.W.3d 64, 73 (Ky. 2010). Here, the questioning on cross-examination was a clear response to Appellant's assertion that Burton made up the allegation in order to cause dissension between Appellant and his girlfriend. The cross-examination cited by Appellant was no more than a "test [of] the accuracy of the knowledge of the witness, his source of information, his motives, interest and memory." *Louisville & N. R. Co. v. Gregory*, 284 Ky. 297, 144 S.W.2d 519, 521 (1940). "[C]ross-examination [can be] essentially a request for detail and elaboration on appellants' theory of defense."

*McCranney v. Commonwealth*, 449 S.W.2d 914, 915 (Ky.1970).

It was Appellant who first tried to establish Burton's testimony as false by ascribing to him the motive of trying to damage the relationship between Appellant and his girlfriend. It was proper for the prosecutor to cross-examine him on the point, and this questioning fell well within the wide latitude permitted for cross-examining a witness. Accordingly, there was no error.

**D. The Prosecutor Did Not Encourage The Jury To Infer Appellant's Guilt From The Fact That He Was Indicted.**

■ Finally, Appellant argues that the Commonwealth engaged in misconduct by suggesting that Appellant's guilt could be inferred from the fact that he had been indicted. In his closing argument, defense counsel claimed that some people can be charged "automatically" because the grand jury serves as the Commonwealth's "rubber stamp." He used the oft-repeated claim that "[the Grand Jury] will indict a ham sandwich." The prosecutor responded to those remarks in his closing argument, as follows:

"Ms. Saylor, she's not a person of special privilege and she's not a ham sandwich. It wasn't indicted or not indicted by any particular favoritism to anyone. This is a case about people being harmed, about people being crippled. It's a case about violence, about violence in our community. That's why the grand jury listened to the evidence in this case; that's why they indicted; that's why we're here today."

The prosecutor was responding directly to defense counsel's claim that the grand jury would indict anyone for any reason. The prosecutor's comment in no way suggests that Appellant's guilt should be inferred from the fact that he was indicted, and we

find no error in it. Appellant's unpreserved argument to the contrary borders on frivolous.

Accordingly, we find that none of Appellant's claims of prosecutorial misconduct during the trial of his case have any merit.

## IV. CONCLUSION

For the reasons stated above, we reverse Appellant's conviction for first-degree assault relating to the shooting and serious physical injury inflicted upon Tim Burton. We affirm all of his other convictions presented herein. We remand this matter to the Jefferson Circuit Court for entry of judgment consistent with this opinion.

All sitting. All concur.