RENDERED:  JULY 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0557-MR

EMERSON KILBURN                                                    APPELLANT


v.                    APPEAL FROM PERRY CIRCUIT COURT
              HONORABLE ALISON C. WELLS, JUDGE
              ACTION NO. 21-CR-00160


COMMONWEALTH OF KENTUCKY                              APPELLEE


AND


NO. 2024-CA-0736-MR


EMERSON KILBURN                                                    APPELLANT


v.                    APPEAL FROM PERRY CIRCUIT COURT
              HONORABLE ALISON C. WELLS, JUDGE
              ACTION NO. 21-CR-00161


COMMONWEALTH OF KENTUCKY                              APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

JONES, A., JUDGE:  Emerson Kilburn appeals from the Perry Circuit Court's judgments and sentences of imprisonment following the court's orders revoking her probation.  After reviewing the record, we affirm.

## I. BACKGROUND

On September 24, 2021, Kilburn was the subject of two separate indictments by the grand jury after a spree of criminal activity in Perry County.  In Perry Circuit No. 21-CR-00160, she was indicted on second-degree assault,[1] first-degree criminal mischief,[2] second-degree criminal mischief,[3] and third-degree criminal mischief.[4]  In Perry Circuit No. 21-CR-00161, Kilburn was indicted on a

---

[1]  Kentucky Revised Statute (KRS) 508.020, a Class C felony.  The indictment alleges Kilburn "intentionally assaulted Ashley Smith Lewis by hitting her in the head with a dangerous instrument (rock) and biting her thereby causing physical injury."  (Record (R.) in 21-CR-00160 at 1-2.)

[2]  KRS 512.020, a Class D felony.  The indictment alleges Kilburn "busted out the windows of 2015 Jeep Grand Cherokee causing damage in excess of $1,000.00."  (R. in 21-CR-00160 at 2.)

[3]  KRS 512.030, a Class A misdemeanor.  The indictment alleges Kilburn "busted a window and damage[d] the underpinning to a trailer owned by Daryl Riddle."  (R. in 21-CR-00160 at 2.)

[4]  KRS 512.040, at that time a Class B misdemeanor.  The indictment alleges Kilburn "damaged a 2021 Chevrolet Silverado by throwing a drill and hitting it thereby causing damage."  (R. in 21-CR-00160 at 2.)

-2-

single count of second-degree criminal possession of a forged instrument.[5] Kilburn

thereafter negotiated a guilty plea with the Commonwealth in which Kilburn

agreed to a five-year concurrent sentence, covering both indictments, probated for

five years.  She also agreed to pay restitution to the victims.  For its part, in

addition to recommending probation, the Commonwealth also agreed to dismiss

the third-degree criminal mischief count as part of the plea.  The trial court

accepted Kilburn's negotiated plea and entered final judgment in accordance with

its terms on April 13, 2022.

Unfortunately, Kilburn almost immediately began violating the terms

of her supervised probation.  On April 21, 2022, her probation officer reported that

she had failed to submit to drug testing.  After the Commonwealth's probation

revocation motion and a subsequent hearing, the trial court ordered the resumption

---

We note here that the General Assembly recently repealed KRS 512.040 when it recodified the criminal mischief offenses.  Previously, first-degree criminal mischief covered property damage greater than $1000.00, second-degree criminal mischief covered property damage between $500.00 and $1000.00, and third-degree criminal mischief covered damage less than $500.00.  The General Assembly has since amended the statutes so that first-degree criminal mischief applies to property damage of $500.00 or more, second-degree criminal mischief is for damage less than $500.00, and third-degree criminal mischief no longer exists. *See* 2024 Ky. Acts ch. 174 §§ 10, 11, 54. (effective Jul. 15, 2024).

[5] KRS 516.060, a Class D felony.   The indictment alleges Kilburn "uttered, possessed, and passed a forged instrument in the form of a checking transaction ticket from First Trust Bank for an account belonging to Daniel Kilburn and withdrew $2504 from said account . . . ."  (R. in 21-CR-00161 at 1.)

of Kilburn's probation. (R. at 48, 57.)[6] This was only the first in a series of Kilburn's drug-related violations over the next year and a half. On July 1, 2022, Kilburn violated supervision when she failed to submit to a drug test. After the Commonwealth's revocation motion, the trial court again ordered probation to resume after time served, contingent upon a clean drug screen. (R. at 68, 74.) On January 13, 2023, Kilburn violated supervision when she tested positive for benzodiazepines. The trial court ordered a ten-day jail term as a sanction before reinstating probation. (R. at 79, 89-90.) On April 25, 2023, Kilburn violated supervision when she submitted a diluted testing sample. The trial court did not revoke her probation, but it warned her that further diluting her tests "could result in jail time." (R. at 92, 96.) On October 11, 2023, Kilburn violated supervision by testing positive for cocaine. As part of reinstating probation, the trial court ordered Kilburn to participate in an intensive outpatient drug treatment program at Mountain Comprehensive Care Center. (R. at 98-99, 107.)

Finally, on November 28, 2023, Kilburn violated supervision by once again testing positive for cocaine. After a revocation hearing, the trial court entered two written orders on January 8, 2024.[7] The first order found that Kilburn had violated the terms of her probation by using illegal drugs. Nonetheless, the

---

[6] From this point forward, citations to the record refer to Perry Circuit No. 21-CR-00160, as the records in each case are largely duplicative after the indictments.

[7] Although both orders were entered on January 8, 2024, the first order was signed by the trial court on January 5, while the second was signed on January 8.

-4-

trial court's first order reinstated Kilburn's probation upon the condition that, in lieu of revocation, she "shall complete a long-term residential program of no less than six (6) months[.]" (R. at 127.) The order also explicitly stated that failure to complete the six-month residential treatment program would be grounds for revocation.

The trial court's second order was more specific, as it directed Kilburn to complete the six-month inpatient program at a particular facility, Revived Essence Recovery. The order required Revived Essence Recovery to provide the court with monthly reports on Kilburn's progress, and it also directed personnel to contact the court in the event that Kilburn either completed the program or was involuntarily discharged from it. The order also stated that Kilburn "shall not be released or allowed to leave Revived Essence Recovery for any purpose without the consent of the Perry County Judge." (R. at 130.) This order also directed a parallel provision at Kilburn, telling her that she "shall not leave the program or its facilities without the express permission of the Court." (R. at 130.) Finally, the second order directed that Kilburn, after successful completion of the program, was required to abide by prior conditions imposed by the court and "shall contact Revived Essence Recovery for aftercare." (R. at 130.)

Revived Essence Recovery had a bed ready for Kilburn on January 10, 2024, and she was transported to the facility. Despite the trial court's order

stating that she was to remain there for at least six months, Kilburn left Revived Essence Recovery after a little more than a week, electing to check herself out of the facility against medical advice on January 19th. Without receiving permission from the trial court, Kilburn instead checked herself into a different residential substance abuse treatment program, Addiction Recovery Care (ARC), on January 21, 2024. The next day, the trial court issued a bench warrant for Kilburn and set a hearing on the probation violation for April 4, 2024.

During the revocation hearing on April 4, 2024, the trial court first heard testimony from Kilburn's probation and parole officer, Ricky Baker. Baker testified that Kilburn was under a court order to go to Revived Essence Recovery for at least six months, and she did not complete treatment. He also testified that Kilburn left that facility on January 19th, and she had not reported to probation and parole since that time. When cross-examined as to whether Kilburn had absconded from probation, Baker stated that Kilburn had remained in contact with Paige Williams, a court liaison for the Perry Circuit Court, and that Williams had informed him of Kilburn's location at ARC. Nonetheless, he reiterated that Kilburn had been ordered to go to Revived Essence Recovery, not ARC. Baker ultimately testified that Kilburn was a danger to the community and herself, and there was no likelihood that she could be managed in the community.

The second witness at the revocation hearing was Paige Williams. She testified that Kilburn had contacted her to inform her that she had left Revived Essence Recovery and was attending a different long-term facility. When asked whether she had made representations to Kilburn about whether the new facility would satisfy the court and the probation officer, Williams denied doing so. She testified that she specifically told Kilburn that she would provide documentation to the trial court and Baker about Kilburn's current location, but she also stressed that she told Kilburn that she needed to report to probation and parole. Williams also testified that she informed Kilburn that the trial court issued a warrant for her because she did not stay where she was ordered to go.

Kilburn testified on her own behalf during the revocation hearing. She asserted that the individual who assessed her at the jail, Rebecca Kilburn,[8] told her that she would be at the treatment facility for sixty days, not six months, and when she asked Rebecca about the trial court's order for six months, she testified that Rebecca told her the order would be corrected.[9] Kilburn also testified that she reported to probation and parole after she completed the ARC facility treatment

---

[8] The record does not indicate whether Rebecca Kilburn is related to the appellant in this case. We will refer to this individual as "Rebecca" to avoid confusion.

[9] Rebecca's testimony during the revocation hearing contradicted Kilburn's account. Rebecca testified that she told Kilburn that the program at Revived Essence Recovery was in phases, and the first phase lasted sixty days. A letter from the director of Revived Essence Recovery largely supports this testimony, indicating that Phase One and Phase Two of the program each lasts approximately thirty days, while Phase Three lasts four months, for a total of about six months of long-term treatment. (R. at 132.)

after sixty days, when she was informed that there was a warrant for her arrest. She admitted she left Revived Essence Recovery without contacting her probation officer, but she asserted that she made several attempts to contact him without success. After that, she left it to others to contact probation and parole on her behalf.

After hearing arguments from counsel during the revocation hearing, the trial court quoted from its orders on January 8th, saying that treatment was offered in lieu of revocation, and that treatment was for no less than six months. The trial court then quoted from an email chain it had received which had detailed how Kilburn was "disgruntled" at Revived Essence Recovery and decided to leave against medical advice. The trial court noted that Kilburn had committed numerous probation violations in this case, and she had been the subject of numerous sanctions. Finally, when ordered to go to treatment for six months, she did not complete treatment and chose to leave. The trial court ruled that Kilburn was a danger to the community and herself, and she could not be managed in the community because she was unwilling to avail herself of the opportunities which were afforded to her. The trial court then orally revoked Kilburn's probation.

On April 17, 2024, the trial court entered its written judgment and sentence on Kilburn's probation revocation consistent with its oral ruling. The written judgment states that Kilburn violated the conditions of probation by

absconding from probation and by failing to complete her ordered treatment. The judgment also states that the trial court found imprisonment necessary because the probation violation "constitutes a significant risk to prior victims of the supervised individual and/or the community at large and the defendant cannot be appropriately managed in the community." (R. at 224.) The written judgment ultimately revokes probation and orders Kilburn to serve the five-year concurrent sentence for Perry Circuit Nos. 21-CR-00160 and 21-CR-00161. This appeal followed.

## II. ANALYSIS

In her first issue on appeal, Kilburn asserts the trial court's decision to revoke her probation was an abuse of discretion, which is the appropriate standard of review in such cases. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). "Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id*. (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). "Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

-9-

A trial court traditionally has "broad discretion in overseeing a defendant's probation, including any decision to revoke[.]" *Andrews*, 448 S.W.3d at 777. However, this traditional deference was modified when, "[i]n 2011, the Kentucky General Assembly enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 (HB 463)." *Id*. at 776 (internal quotation marks omitted). As part of this legislation, KRS 439.3106(1) provides the following:

> Supervised individuals shall be subject to . . . [v]iolation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]

A trial court must make both findings regarding risk and the inability to be managed in the community before revoking probation. "[W]hile trial courts retain discretion in revoking probation, consideration of the criteria provided in KRS 439.3106 is a mandatory prerequisite to revocation." *Richardson v. Commonwealth*, 494 S.W.3d 495, 498 (Ky. App. 2015). The essential questions are "[w]hether the evidence of record supported the requisite findings that [the appellant] was a significant risk to, and unmanageable within, his community; and whether the trial court, in fact, made those requisite findings." *McClure*, 457 S.W.3d at 732. However, "neither KRS 439.3106 nor *Andrews* require anything

-10-

more than a finding to this effect supported by the evidence of record." *Id.* at 733. If the trial court complies with this requirement, it owes the appellant "no further explanation." *Id.*

Kilburn admits that the trial Court made both mandatory findings, and she correctly states that specific findings are not needed, only that the record as a whole must support the trial court's determination. Kilburn argues that the trial court abused its discretion because there was no specific indication in the record that Kilburn "is a significant risk to her prior victim . . . or to anyone in the community." (Appellant's Brief at 8.) Kilburn admits that she did not follow the trial court's order, and that she "made everyone angry[,]" but she argues there is nothing to support the trial court's finding that she was a significant risk. (Appellant's Brief at 8.) She argues that this case "should be a golden opportunity for the appellate Court to reiterate *Kendrick v. Commonwealth*, 664 S.W.3d 731[, 735] (Ky. App. 2023), which held that a 'perfunctory regurgitation of the findings required by KRS 439.3106' is simply not enough." (Appellant's Brief at 10.)

We disagree with Kilburn's assertion that the record is devoid of evidence supporting the trial court's determination regarding her risk to the community. The record reflects a pattern of probation violations showing that Kilburn has an unmanaged addiction to illegal drugs, and she absconded from the specific treatment center ordered by the trial court. An individual on probation is

-11-

not free to unilaterally disregard a trial court's order and alter the terms of her probation. Even if the record does not show that Kilburn was a specific danger to her previous victims, a continuing pattern of illegal drug use and absconding from the treatment center demonstrates a risk to the community as a whole.

This court has repeatedly held that a demonstrated determination to continue illegal drug use would lead to findings that a probationer is a risk to the community and unable to be managed in that community; *see, e.g.*, *McClure*, 457 S.W.3d at 733 (holding "a person who would go to such lengths to continue using a substance he was forbidden to use under penalty of five years in prison posed a significant risk to, and was unmanageable within, the community in which he lived"). *Kendrick*, the precedent Kilburn asks us to reaffirm, also explicitly supports this view. "As to his being a significant risk, [Appellant] absconded, continued to use illegal drugs, and pleaded guilty to a drug-related offense in Tennessee." *Kendrick*, 664 S.W.3d at 735. *Kendrick* is indeed applicable because Kilburn made similar choices, and these choices support the trial court's ruling regarding Kilburn's risk to the community.

We must note here that the trial court in this case did not perfunctorily revoke Kilburn's probation, as was done in *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). In this case, the trial court exercised extreme forbearance in view of Kilburn's extended pattern of violations, and it only

revoked her probation after many lesser graduated sanctions had failed, up to and including long-term inpatient treatment. Additionally, the trial court's order explicitly warned Kilburn when it sent her to the treatment facility, telling her that this sanction was in lieu of revocation. After this last violation, and under these circumstances, we will not say the trial court abused its discretion when it finally revoked her probation.

For her second issue on appeal, Kilburn argues the trial court abused its discretion when it received evidence in the form of an email chain from Revived Essence Recovery, which documented the circumstances behind Kilburn's departure from treatment. Kilburn asserts she was not aware of the email chain until the trial court read from the emails *sua sponte* when it made its decision following the close of evidence at the revocation hearing. Had she known of this email chain, Kilburn contends it would have helped her to impeach Rebecca's testimony regarding the length of time Kilburn was supposed to be at Revived Essence Recovery. Kilburn admits that there was no objection at the trial court level, but she asks us to review this issue for palpable error under RCr[10] 10.26. "Under the palpable error standard, an unpreserved error may be noticed on appeal only if the error is 'palpable' and 'affects the substantial rights of a party,' and even then relief is appropriate only 'upon a determination that manifest injustice

---

[10] Kentucky Rule of Criminal Procedure.

-13-

has resulted from the error.'" *Kiper v. Commonwealth*, 399 S.W.3d 736, 747 (Ky. 2012) (quoting RCr 10.26).

After reviewing the record, we cannot say that the trial court's use of the email chain calls for reversal as a matter of manifest injustice. It could not have been a complete surprise to the parties that the trial court was in contact with Revived Essence Recovery, because the trial court's January 8, 2024 order directed Revived Essence Recovery to report to the court regarding Kilburn's care. (R. at 130.) Even though it may have been more prudent, as an evidentiary matter, for the trial court to circulate the emails it had received to counsel, we cannot say that the trial court's use of the emails "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Id*. (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)).

The trial court was in full possession of all relevant information in the case, including all of Rebecca's statements in court and in the emails, and nonetheless elected to revoke Kilburn's probation based on the factors in KRS 439.3106, which were supported by evidence in the record. Additionally, what Rebecca may have believed about how much time Kilburn should spend in treatment, or how much time Kilburn believed she should spend in treatment, is immaterial in light of the trial court's direct order specifying six months or more. It is uncontroverted that Kilburn continued her illegal drug use, repeatedly violated

conditions of her probation, and ultimately absconded from the long-term treatment facility ordered by the trial court. The email chain at issue did not alter those fundamental facts, nor were the contents of the emails significant enough in themselves to result in manifest injustice.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Thomas P. Jones
Beattyville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky