# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 14, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0359-MR

MICHAEL DODSON APPELLANT

V.

ON APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE KENNETH GOFF, JUDGE
NO. 23-CR-00060

COMMONWEALTH OF KENTUCKY APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case is before the Court as a matter of right from the Appellant's, Michael Dodson, convictions for rape in the first degree (victim under twelve), sodomy in the first degree (victim under twelve), and sexual abuse in the first degree (victim under twelve). He was sentenced to life in prison. On appeal, he argues the jury instructions violated the unanimity requirement and double jeopardy. He also argues hearsay statements contained in the authenticated medical records submitted at trial were improperly admitted. Because we conclude these arguments were either waived or harmless, we will not go into significant detail on the underlying facts as they are largely irrelevant to our disposition. For the following reasons, Dodson's convictions are affirmed.

Dodson lived with the victim, J.T.,[1] for approximately six months to one year beginning when she was four years old and into her fifth year of life. He is her half-uncle. J.T. testified at trial that Dodson would abuse her in his bedroom by putting his tongue on and inside her vagina. She testified to seeing images of pornography on his phone depicting the same act. After reporting the abuse to her cousin and older sister, J.T.'s mother was informed, and Dodson was told to leave the home. J.T. was taken to the local Children's Advocacy Center and interviewed. Her forensic interview, played at trial at Dodson's behest, repeated the same allegations as well as an allegation that Dodson used his hands on and inside her vagina.

Dodson testified in his own defense. He recounted a sexually precocious young girl who would crawl on him while he was in bed and would grab ahold of his crotch in order to pull herself up onto him. She would then place her butt in his face which he would then have to touch in order to remove her. He also asserted J.T. would sit on his lap and wiggle inappropriately upon him; this, too, prompting him to remove J.T. Finally, he testified J.T. accessed pornography on his phone (despite being five years old and illiterate at the time) and he took the phone from her when he noticed it. Despite claiming J.T. was acting sexually inappropriate for her age, he never told her grandmother (her legal custodian) about his alleged misgivings.

---

[1] We use initials to protect the identity of the victim. J.T. was seven years old at the time of trial.

After forty-five minutes of deliberation, the jury sentenced Dodson to life in prison plus thirty-five years consecutive. The trial court properly reduced the sentence to life in prison. Dodson now argues the instructions below violated the unanimity requirement and double jeopardy. To quote his brief,

> although there were a sufficient number of different acts to support three different criminal charges, the instructions to the jury provided no way to differentiate between the three charges. All three charges could have been satisfied by a single act of Mr. Dodson's mouth penetrating J.T.'s private parts. There can be no confidence that the jury did not find guilt on all three charges for that single act.

Similarly, regarding double jeopardy, Dodson argues

> [t]he jury, as instructed, could not have known whether the rape, sodomy, and sexual abuse instructions pertained to their own unique alleged facts and which act was supposed to match each instruction, or whether they were permitted to find Mr. Dodson guilty of all three crimes for the same conduct.

Despite these arguments, Dodson concedes the issue is unpreserved and requests palpable error review. The Commonwealth responds the issue is in fact waived. When asked by the trial court whether he agreed with the proposed jury instructions, Dodson's counsel stated, "[r]egarding the instructions themselves I think, generally speaking, the defense is okay with these instructions, Judge." The only issue counsel raised was the numbering of the instructions as a typographical error.

Finally, during trial, the medical records of J.T. regarding her abuse and visit to the hospital were properly authenticated and certified. Dodson made no objection to this. He did, however, object to certain statements within the medical records both of which, generally, identify Dodson as her abuser and

3

how the abuse was perpetrated. The wording of the records also makes it ambiguous who exactly was reporting the details: J.T., her sister, or her mother. Dodson, therefore, argues that there is hearsay-within-hearsay (and perhaps hearsay-within-hearsay-within-hearsay). The Commonwealth argues the facts of how the abuse occurred fall within the hearsay exception for statements made for medical treatment under KRE[2] 803(4). It also rejects the contention that there are multiple layers of hearsay in the statements. It concedes the identification of Dodson as the abuser was erroneous, but harmless as J.T. testified at trial, identifying Dodson as her abuser and affirming the same facts of abuse as recounted in the medical records. In other words, to the extent the medical records could be considered hearsay, they are merely cumulative and harmless.

We agree with the Commonwealth on all issues. As to the arguments regarding unanimity and double jeopardy, we conclude these errors were invited because defense counsel told the trial court "the defense is okay with these instructions, Judge." In *Sanchez v. Commonwealth*, we held the appellant, "[b]y expressly agreeing to the jury instructions, apart from the absence of a missing evidence instruction . . . waived his ability to now challenge those instructions on appeal." 680 S.W.3d 911, 930 (Ky. 2023). In *Boggs v. Commonwealth*, we reached a similar conclusion when the trial court asked the parties if they had any objections to the proposed jury instructions

---

[2] Kentucky Rules of Evidence.

and defense counsel responded in the negative. --- S.W.3d --- (Ky. 2025), 2025 WL 1717814, at *4 (Ky. June 20, 2025) (finality achieved on 07/11/2025).[3]

Similarly, in *Boggs*, we held "double jeopardy claims are subject to an invited error analysis." *Id.* We explained that double jeopardy arguments have previously been held to be subject to waiver. *Id.* (citing *Couch v. Maricle*, 998 S.W.2d 469, 470-71 (Ky. 1999)). We then expressed our agreement with the First Circuit Court of Appeals, that "[t]he protection embodied in the Double Jeopardy Clause is a personal defense that may be waived or foreclosed by a defendant's voluntary actions[.]" *Id.* (citing *United States v. Newton*, 327 F.3d 17, 21 (1st Cir. 2003)). Accordingly, Dodson has waived his unanimity and double jeopardy arguments by expressly agreeing to the instructions at trial.[4]

As to the medical hearsay argument, we generally agree with the Commonwealth that the statements describing the abuse were subject to KRE

---

[3] The Opinion of the Court in *Boggs* is a plurality opinion. Two justices concurred in part and dissented in part. Two justices concurred in result only. None of the four, however, took issue with the conclusion regarding the waiver of Boggs' unanimity and double jeopardy arguments. Therefore, the opinion is a controlling 5-2 decision so far as these issues are concerned.

[4] Our law does hold that failure to object does not constitute waiver of a double jeopardy claim. *Kiper v. Commonwealth*, 399 S.W.3d 736, 740 (Ky. 2012). The difference here, as in *Sanchez* and *Boggs*, is the affirmation that there is no objection, i.e., an affirmative expression of agreement. That is the difference between an unpreserved error and invited error. Even the Supreme Court of the United States has acknowledged double jeopardy claims can be waived. *Jeffers v. United States*, 432 U.S. 137, 152 (1977); *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Finally, Kentucky is not the only state to hold double jeopardy claims are barred by the invited error doctrine. *See e.g., Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000); *Bradley v. State*, 925 So.2d 232, 241 (Al. 2005); *People v. Echevarria*, 843 N.E.2d 149 (N.Y. App. 2005); *Flowers v. State,* 149 So. 3d 1206, 1209 (Fla. Dist. Ct. App. 2014); *State v. Quinn*, 414 P.3d 753 (Kan. Ct. App. 2018); *State v. Hugayes*, 867 S.E.2d 262 (N.C. App. 2022); *Bush v. State,* 208 N.E.3d 605, 611 (Ind. App. 2023).

803(4). *Hoff v. Commonwealth*, 394 S W 3d 368, 374 (Ky. 2011). We also agree the identity of the perpetrator in those statements should have been redacted. *Colvard v. Commonwealth*, 309 S.W.3d 239, 246 (Ky. 2010). Rather than parse the verbiage of the statements to determine whether they constitute multiple layers of hearsay, we will, for the sake of argument, assume error and proceed to a harmless error analysis. *See, e.g., Johnson v. Commonwealth*, 694 S.W.3d 232, 251 (Ky. 2023) ("We assume without deciding that Johnson is correct that the statements do not fall within a hearsay exception and proceed to a harmless error analysis.").

Our jurisprudence has consistently held "the erroneous admission of cumulative evidence is a harmless error." *Torrence v. Commonwealth*, 269 S.W.3d 842, 846 (Ky. 2008). *Torrence* specifically involved the hearsay testimony of a nurse regarding statements of the victim. *Id.* In *Combs v. Commonwealth*, we held evidence of a blood test improperly admitted was nonetheless "merely cumulative and, thus, harmless error in this case." 965 S.W.2d 161, 165 (Ky. 1998). Finally, in *Wells v. Commonwealth*, then-Justice Minton held "the introduction of the DNA report, though improper, was a harmless error" because it was cumulative. 206 S.W.3d 332, 335-36 (Ky. 2006) (Minton, J., concurring).[5] Consequently, even assuming error, we find it harmless as J.T. testified in person to the substance of her abuse and identified Dodson as its perpetrator; and Dodson introduced the forensic

---

[5] Justice Minton was joined by three other justices in this opinion, making his concurrence an authoritative statement of law. *Wells*, 206 S.W.3d at 335.

interview of J.T. which did the same. The medical reports were cumulative and therefore, at worst, harmless.

For the aforementioned reasons, we affirm Dodson's convictions and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Ryan D. Mosley
Assistant Solicitor General