# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED:  OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0571-MR

CHRISTOPHER A. HILL                                    APPELLANT

            ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.             HONORABLE TIMOTHY JON KALTENBACH, JUDGE
                      NO. 18-CR-00159

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Christopher Hill was convicted of fourth-degree assault of Kierran Jones, retaliating against a participant in a legal process, and persistent felony offender in the first degree ("PFO1").  He received a sentence of twenty years' imprisonment and now appeals as a matter of right.[1]  For the following reasons, we affirm.

## I.  BACKGROUND

Hill and Jones are cousins and have known each other a long time.  In late 2017, their relationship deteriorated.  Jones attributed the strain on their relationship to his arrest for criminal possession of a forged instrument in the

---

[1] Ky. Const. § 110(2)(b).

second degree after he passed a counterfeit $100 banknote that Hill had given him. When Jones told Hill he was going to "snitch" on him to the police and tell police that Hill was the one who gave him the counterfeit money, Hill threatened to kill him. Hill attributed the demise of their relationship to the fact that their cousin, Jeremyon Adams, shot up Hill's dad's house and Hill made a social media post about it, after which Adams was arrested. Hill claimed no knowledge of Jones's arrest on the forged instrument charge, while Jones claimed no hostility between them from the situation with Adams.

Hill testified that he was planning on beating up Jones and recording it because Jones had slandered him on social media, calling him a "snitch." A week after Hill threatened to kill Jones, Hill attacked him at the residence of a mutual friend, Shanice Snipes. Hill beat Jones to the point of unconsciousness, stole Jones's phone, shoes and his clothes except his pants, then dragged him out of Snipes's place and left him outside to eventually walk shoeless in the snow to a neighbor's house where he called the police. Jones then went to the hospital to receive medical treatment for his injuries.

A jury convicted Hill of fourth-degree assault (as a lesser-included offense of first-degree robbery), retaliating against a participant in a legal process, and PFO1. The trial court imposed the jury's recommended sentence of twenty years. Hill now appeals, raising multiple claims of error.

## II. ANALYSIS

### A. Hill was not entitled to a directed verdict of acquittal on the charge of retaliating against a participant in a legal process.

2

Hill contends that insufficient evidence was adduced at trial for a reasonable jury to have found him guilty of retaliating against a participant in a legal process, thus the trial court should have directed a verdict of acquittal in his favor. At the conclusion of the Commonwealth's case, Hill verbally moved for a directed verdict, stating "We make a motion for directed verdict on the felony charges and say that there is not sufficient evidence. The Commonwealth has not met its burden and there's not sufficient evidence to proceed on those charges." The trial court clarified that Hill was moving for a directed verdict on the first-degree robbery charge, which Hill confirmed. The trial court denied the motion, with respect to first-degree robbery and the charge of retaliating against a participant in a legal process. The trial court likewise denied Hill's renewal of the directed verdict motion at the close of all the evidence.

Kentucky law disfavors general motions for directed verdict which do not specify the grounds upon which the motion is based:

> This Court has recently reaffirmed that failure to state specific grounds for a motion for directed verdict will foreclose appellate review of the trial court's denial of that motion. In the motion, no specific mention was made of a lack of evidence as to any particular element of the charges; Appellant merely asserted that there was insufficient evidence as to each and every charge pending against him. Without a specific objection, "[t]he trial court was never given an opportunity to address the question of whether there was lack of evidence on this particular element of the offense." Appellant should have objected to the giving of an instruction on the individual charges and stated his reasons and disclosed which elements were missing.

*Gibbs v. Commonwealth*, 208 S.W.3d 848, 857 (Ky. 2006) (footnotes omitted), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky.

2010). "Following our precedent, we have staunchly held that a party's failure to state the specific grounds for a directed-verdict motion 'foreclose[s] appellate review.'" *Sevier v. Commonwealth*, 434 S.W.3d 443, 454 (Ky. 2014) (quoting *Pate v. Commonwealth*, 134 S.W.3d 593, 597–98 (Ky. 2004) ("CR[2] 50.01 requires that a directed verdict motion 'state the specific grounds therefore,' and Kentucky appellate courts have steadfastly held that failure to do so will foreclose appellate review of the trial court's denial of the directed verdict motion[]")).

Hill's verbal motions for a directed verdict are too general to consider them preserved for appellate review under the typical directed verdict standard[3] as they failed to specify how the specific elements of the charges were unsupported by the evidence presented. That noted, because Hill's reply brief has requested, in the alternative, review under RCr[4] 10.26, we will review this alleged error under that standard:

> Under RCr 10.26, an unpreserved error may generally be noticed on appeal if the error is palpable and if it affects the substantial rights of a party. Even then, relief is appropriate only upon a

---

[2] Kentucky Rules of Civil Procedure.

[3] "On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citation omitted).

[4] Kentucky Rules of Criminal Procedure.

determination that manifest injustice resulted from the error. For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotations omitted).[5]

Hill was convicted of retaliating against a participant in a legal proceeding under KRS[6] 524.055, which states:

(1) A person is guilty of retaliating against a participant in the legal process when he or she engages or threatens to engage in conduct causing or intended to cause bodily injury or damage to the tangible property of a participant in the legal process or a person he or she believes may be called as a participant in the legal process in any official proceeding or because the person has participated in a legal proceeding:
    (a) Attending an official proceeding, or giving or producing any testimony, record, document, or other object produced at that proceeding;
    (b) Giving information to a law enforcement officer relating to the possible commission of an offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
    (c) Vote, decision, or opinion; or
    (d) Performance of his or her duty.

(2) Retaliating against a participant in the legal process is a Class D felony.

---

[5] Regarding the Commonwealth's assertion that summary affirmance is necessary due to Hill's failure to request palpable error in his initial appellate brief, "CR 76.12(1) and 76.12(4)(e) permit the appellant to file a reply brief 'confined to points raised in the briefs to which they are addressed.' Generally, an appellant is not obliged to anticipate that the Commonwealth will challenge preservation, and once it does he is free under the rule to reply to the Commonwealth's point by arguing that, even if unpreserved, the error is one that may be noticed as palpable. The Commonwealth, of course, may argue in its appellee's brief not only that the alleged error is unpreserved but also that it does not warrant palpable error relief. It is neither unfair to the Commonwealth nor unduly burdensome to expect it to use that opportunity to address as fully as it deems necessary an issue it has raised." *Commonwealth v. Jones*, 283 S.W.3d 665, 670 (Ky. 2009).

[6] Kentucky Revised Statutes.

(3) In order for a person to be convicted of a violation of this section, the act against a participant in the legal process or the immediate family of a participant in the legal process shall be related to the performance of a duty or role played by the participant in the legal process.

As this Court has explained,

> [T]he offense of retaliation requires only that the person being retaliated against either be, be expected to be, or already have been a participant in the legal process. Though retaliation is ordinarily thought of as occurring after the fact (e.g., after a witness has testified), the statute is drafted to cover violence against a person who has not yet participated (e.g., has not yet testified), so long as the act is related to the person's participation in the legal process. KRS 524.055(3).

*Pettway v. Commonwealth*, 470 S.W.3d 706, 709 (Ky. 2015). *See also Edmonds v. Commonwealth*, 433 S.W.3d 309, 325 (Ky. 2014) (the act of retaliation must be related to a legal proceeding).

Hill maintains that a directed verdict was warranted because the Commonwealth failed to prove that he was retaliating against Jones to prevent Jones from implicating him in the counterfeit money scheme. Hill emphasizes that the only evidence of record that Jones was charged with counterfeiting, and therefore was involved in a "legal process" for purposes of KRS 524.055(3), was Jones's own testimony. Further, Hill argues that no evidence was presented, aside from Jones's testimony, that Hill knew of Jones's involvement in the counterfeiting scheme, that Hill would be implicated in the crime, or that the counterfeit money had anything to do with the fight.

However, Hill's attack on the sufficiency of the evidence is essentially an argument that the jury should have believed his account of the events instead

of Jones's. Kentucky law is clear that "[t]his court will not invade the jury's province to weigh conflicting evidence, judge the credibility of the witnesses and draw the ultimate conclusion." *Clark v. Commonwealth*, 567 S.W.3d 565, 569–70 (Ky. 2019) (citation omitted). Jones testified that he was arrested for criminal possession of a forged instrument in the second degree after passing a counterfeit $100 banknote, and that Hill was the one who had given him the counterfeit money. Jones testified that he spoke to Hill about the counterfeit money and the fact that he had been arrested and charged. Jones further testified he told Hill that he (Jones) was going to "snitch" on Hill to police. Jones said Hill then threatened to kill him if he did. Hill admitted to the jury that he had planned to beat up Jones and videotape the assault, but claimed the assault was for the earlier shooting involving Jeremyon Adams.

Based on the evidence presented, a reasonable jury could have concluded that Hill planned to assault Jones in an effort to prevent Jones from informing police that Hill had provided him with counterfeit money to pass. Thus, under KRS 524.055, sufficient evidence was presented to allow the jury the find Hill guilty of retaliating against a participant in a legal process. Considering that this claim of error was not properly preserved, Hill has failed to demonstrate a manifest injustice justifying reversal under the palpable error standard of RCr 10.26.

### B. Hill's right to a unanimous verdict was not violated.

Hill argues that the jury instruction for retaliating against a participant in a legal process resulted in a non-unanimous and unreliable verdict. As Hill

7

failed to preserve this issue, we will review it under the palpable error standard of RCr 10.26. *See Martin v. Commonwealth*, 456 S.W.3d 1, 9–10 (Ky. 2015) ("[A]ll unanimous verdict violations constitute palpable error resulting in manifest injustice[]").

In Kentucky, for a criminal conviction to stand, a defendant is entitled to a unanimous jury verdict of guilty. *King v. Commonwealth*, 554 S.W.3d 343, 350-52 (Ky. 2018); *see also Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978) (stating that Kentucky Constitution Section 7 "requires a unanimous verdict reached by a jury of twelve persons in all criminal cases[]"). Hill argues that the jury instruction for retaliating against a participant in a legal process failed to specify which legal process led to the retaliation. Based on the proof presented at trial, Hill maintains that some jurors could have found that the legal process was the prosecution of Jones for passing the counterfeit money, while other jurors could have believed that the legal process was the prosecution of Jeremyon Adams for an earlier shooting incident.

The retaliation instruction read as follows:

You will find the defendant, Christopher A. Hill, guilty of Retaliating Against a Participant in the Legal Process under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about January 15, 2018, and before the finding of the Indictment herein, he struck Kierran Jones with his fists and feet.
B. That he did so because he believed Kierran Jones might give the police information about him regarding a pending legal proceeding. AND
C. That the defendant's acts related to Kierran Jones being a potential witness.

These jury instructions parrot the language of KRS 524.055, which provides that "a person is guilty of retaliating against a participant in the legal process when he threatens to engage in conduct causing or intended to cause bodily injury or damage to the tangible property of a participant in the legal process or a person he or she believes may be called as a participant in the legal process in any official proceeding or because the person has participated in a legal proceeding[.]"

Because the evidence showed that two separate legal processes could have been underway, Hill contends a unanimous verdict violation exists under *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013). In *Johnson*, the Court found an unanimity issue exists "[r]egardless of how it happens—either when the instruction explicitly includes multiple criminal offenses or the proof demonstrates them—when a jury instruction and resulting verdict cover multiple criminal acts, the same principles apply." *Id.* at 449. In *Johnson*, a mother was charged with one count of first-degree criminal abuse for harming her child; however, the proof established that the mother could have harmed the child on not just one, but two occasions. Because the jury instruction did not specify which act of abuse was the basis for the charge, some jurors could have convicted the mother of abuse as to the first occasion and other jurors as to the second. The *Johnson* court observed:

> A duplicitous count, whether appearing in an indictment or jury instructions, presents multiple constitutional problems, including that the jury verdict is not unanimous, which is the issue raised in this case. The courts have stated that two of the reasons for rejecting duplicitous indictments are that a general verdict of guilty does not disclose whether the jury found the defendant guilty of

9

> one crime or both and that there is no way of knowing ... whether the jury was unanimous with respect to either.

*Id.* at 454 (citations and internal quotation marks omitted). In other words, "a duplicitous count includes in a single count what must be charged in multiple counts." *Ruiz v. Commonwealth*, 471 S.W.3d 675, 680 (Ky. 2015) (citation and internal quotation marks omitted).

Hill's case does not present a "duplicitous count" scenario since the jury was instructed on only one count of retaliating against a participant in a legal process. Therefore, the instructional error Hill complains of (failure to specify the legal process underway) did not result in an instruction covering multiple criminal acts of retaliation. The criminal act here was the one instance of retaliation against Jones, not the act of an ongoing legal proceeding.

Hill only cites to *Johnson* in support of his unanimity claim, but we find the holding in *Kingrey v. Commonwealth*, 396 S.W.3d 824 (Ky. 2013) to be instructive, especially with respect to that Court's discussion of multiple theory, or combination, jury instructions. The *Kingrey* court held that "[t]he requirement of unanimity is satisfied if the evidence supported conviction under both theories. This is because, no matter which theory they accepted, all the jurors convicted under a theory supported by the evidence and all the jurors convicted the defendant of the same offense." *Id.* at 830 (citations and internal quotation marks omitted); *see also Miller v. Commonwealth*, 77 S.W.3d 566, 574 (Ky. 2002) ("[A] 'combination' instruction permitting a conviction of the same offense under either of two alternative theories does not deprive a

10

defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory[]").  The *Kingrey* court distinguished the situation of a multiple theory but one criminal act, from the case before it, in which two criminal acts occurred:

> This is not a case in which the jury instruction allowed the jury to convict Kingrey of one crime based on one criminal act under two different theories of the crime. Rather, the jury instruction allowed the jury to convict Kingrey of one crime based on two separate and distinct criminal acts that violated the same criminal statute.

> . . . Because the instruction did not require the jury to specify of which criminal act it found Kingrey guilty, we cannot be sure that all jurors believed that he committed the crime of use of a minor under the age of 18 in a sexual performance as to victim Sophia for his actions at the party or for having Sophia model the underwear sets.

*Id.* at 831.

In the present case, though evidence was presented of two theories of motivation behind Hill's retaliatory conduct, Hill was charged with only one count of retaliation, for the one assault.  Notably, Hill does not dispute that either legal process was sufficient to warrant a conviction, nor does he dispute the existence of both legal proceedings.  He simply claims that if a legal proceeding was underway against Jones for counterfeit money, he knew nothing about it.  However, the jury was charged with weighing the evidence and assessing the credibility of the witnesses.  The jury's conviction of Hill for one count of retaliation was supported by the evidence, regardless of which legal process they believed was at issue, and therefore resulted in a unanimous verdict.

11

Concerning the specificity of the language of the retaliation jury instruction, the trial court was not required to include any additional evidentiary detail on this single count, especially since Hill did not request any, or object to the instructions at trial. In *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008), the defendant was convicted of multiple counts of sexual abuse under identical jury instructions, and the Court held that the lack of distinguishing language in each jury instruction led to a palpable unanimous verdict error because "in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Id.* at 818. However, concerning the defendant's conviction for one count of sodomy, the *Harp* court noted

> Our precedent does not support a conclusion that a trial court is required to include any identifying evidentiary detail in instructions in which a defendant is charged with only one count of an offense. *See Bell v. Commonwealth*, 245 S.W.3d 738, 744 (Ky. 2008) ("When the evidence is sufficient to support **multiple counts** of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others.") (emphasis added).

*Id.* at 821 n.25.

The rule of specificity discussed in *Harp* is not applicable here as Hill was charged with only one count of retaliation, and thus the jury considered only one set of instructions, not multiple identical instructions. Believing the proof of either legal process (or both) was all that was required to sustain Hill's

12

conviction and no unanimity problem or specificity issue arose from the instructions given, accordingly, no error, let alone palpable error, occurred.

### C. *The trial court properly admitted evidence of the counterfeit currency.*

Hill contends that details regarding the counterfeit money should have been excluded under KRE[7] 404(b) as improper character evidence and under KRE 403 as irrelevant. The Commonwealth gave timely notice pursuant to KRE 404(c) of its intent to introduce evidence that Hill provided a counterfeit $100 bill to Jones, who passed it, and who was criminally charged. Hill moved in limine to exclude all KRE 404(b) evidence relating to the counterfeit currency, which the trial court denied, finding that the evidence was related to motive and intent and therefore admissible.

This Court has recently summarized the law relating to the admissibility of bad act evidence under KRE 404(b):

> Under KRE 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admissible, however, "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). It may also be admissible if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2). When considering whether such other bad acts evidence should be admitted, the court must (1) determine whether the evidence is relevant for some purpose other than proving the criminal disposition of the defendant; (2) determine whether the act "is sufficiently probative of its commission to warrant its

---

[7] Kentucky Rules of Evidence.

13

introduction into evidence"; and (3) balance the probative value of the prior bad acts evidence against the potential for undue prejudice. *Bell v. Commonwealth,* 875 S.W.2d 882, 889 (Ky. 1994). On appeal, we review the trial court's decision to admit such evidence for an abuse of discretion. *Harp v. Commonwealth.,* 266 S.W.3d 813, 822 (Ky. 2008).

*Helton v. Commonwealth,* 595 S.W.3d 128, 137 (Ky. 2020). "However, under KRE 403, even relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.'" *Id.*

Hill claims the trial court should have excluded Jones's testimony that he was arrested for criminal possession of a forged instrument in the second degree after passing a $100 bank note, which Hill had given him, and his testimony that Hill threatened to kill him if he told police about Hill's involvement. Applying the tripartite test set forth in *Helton,* first, this evidence is clearly relevant to show Hill's intent and motive for attacking Jones. "Generally, evidence of prior threats and animosity of the defendant against the victim is admissible as evidence of motive, intent or identity[.]" *Davis v. Commonwealth,* 147 S.W.3d 709, 722 (Ky. 2004). To prove retaliation under KRS 524.055, the Commonwealth was charged with showing that Hill threatened "to engage in conduct causing or intended to cause bodily injury or damage to the tangible property of a participant in the legal process or a person he or she believes may be called as a participant in the legal process in any official proceeding[.]"

14

"Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988). Jones's testimony that he informed Hill he was going to "snitch" on him for providing him with the counterfeit currency, and Hill's subsequent threat to kill him, was clearly relevant for purposes of establishing Hill's intent and motive for assaulting Jones: to keep him quiet and to punish him. Jones further testified that Hill stole his phone to delete information about the counterfeit currency and when Jones received his phone back from police, he could tell that someone had gone through it.

Moving on to the second prong of the test, the evidence was sufficiently probative of its commission to warrant its admission. Probative value is measured by how much the evidence tends to make the fact more or less probable. *Hall v. Commonwealth*, 468 S.W.3d 814, 823 (Ky. 2015). Hill's assertion that "counterfeiting is an act that is wildly different from the act of assault or retaliation" misses the point. The Commonwealth did not seek to introduce evidence of Hill's involvement in an entirely, unrelated counterfeiting scheme. Rather, the existence of a legal process (Jones's counterfeiting charge), and an act of retaliation with respect thereto, is part of the proof required to establish culpability under KRS 524.055. Jones's testimony in this regard made more probative the incentive Hill had to attack him.

Not only was this evidence relevant and probative, it was not unduly prejudicial. Unduly prejudicial evidence has been described as that which

15

"appeals to the jury's sympathies, arouses its sense of horror, provokes its intent to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case[]." *Richmond v. Commonwealth*, 534 S.W.3d 228, 232 (Ky. 2017). Hill contends that any evidence that he was potentially involved in another crime (counterfeiting) was inherently prejudicial as it went to the jury's assessment of his credibility. Obviously, Jones's testimony that Hill threatened to kill him if he snitched on him to the police for counterfeiting is prejudicial. However, that does not mean the evidence is unduly prejudicial. We fail to appreciate how admitting Jones's version of the events, and what led Hill to attack him, caused the jury to base its decision on anything other than the elements of KRS 524.055 and whether the Commonwealth met its burden of proof.

Lastly, we note that this evidence was admissible under KRE 404(b)(2) since it was inextricably intertwined with other evidence essential to the case. Evidence of the counterfeit money, and Jones's testimony about Hill's involvement, was interwoven into the case narrative and could not be removed without severely prejudicing the Commonwealth. Accordingly, the trial court did not abuse its discretion by admitting this evidence.

### D. No palpable error resulted from the trial court's admission of three videos of Hill assaulting Jones.

Hill concedes this claim of error was not preserved for review, therefore he requests RCr 10.26 palpable error. He asserts that the trial court's admission of video evidence without a proper foundation having been laid violates KRE 901, which governs the authentication and identification of

16

evidence. KRE 901 reads: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Video recordings, like photographs, must be authenticated before they may be admitted into evidence. *Fields v. Commonwealth*, 12 S.W.3d 275, 279 (Ky. 2000) ("A videotape of a crime scene . . . is just as admissible as a photograph, assuming a proper foundation is laid[]"). To satisfy this preliminary requirement, the offering party only needs to make "a prima facie showing of authenticity." *Johnson v. Commonwealth*, 134 S.W.3d 563, 566 (Ky. 2004). A witness with knowledge may authenticate evidence by testifying that the evidence is what it is claimed to be. KRE 901(b)(1).

In this case, the Commonwealth met its slight burden of demonstrating prima facie authenticity of the videos through the testimony of Jones.[8] The first video portrays Hill beating Jones, taking his phone and talking about the police. The second video shows the same events, but from a different angle. The third video shows the end of the assault, where Jones is lying on the ground shoeless and unconscious. No evidence was introduced as to who recorded the videos. During deliberations, the jury requested to view the videos again and inquired whose phone was used to record the fight. The trial court stated it could not answer this question for them.

---

[8] For whatever reason, the Commonwealth never moved to formally introduce the three videos into evidence as exhibits. Rather, the Commonwealth introduced six still photographs from the videos, which Jones authenticated and to which Hill did not object.

17

Hill argues that the videos do not present the whole depiction of what occurred during the fight and the Commonwealth failed to meet its burden of showing that the videos were not altered through editing or cropping. Hill claims that only the middle portion of the fight was presented, after Jones overpowered him, and had the entire fight been recorded and presented, he could have been entitled to a self-defense instruction for the fourth-degree assault charge. Hill further maintains that because he was never given the opportunity to cross examine the author of the videos, his constitutional right to due process was violated.

Our review of the record reveals that the videos were properly authenticated. Hill testified that he planned to beat up Jones and videotape the assault. Jones testified that he learned of a video recording of the assault after the fact, obtained that recording and other recordings, and provided them to the police. Jones further testified that he had watched all three videos, which appeared to be taken on the day of the assault, identified himself and Hill in the videos, and stated that the videos accurately depicted the events of that day, specifically Hill's assault of him. He also verified the photographs of the assault that the Commonwealth introduced into evidence. *See Litton v. Commonwealth,* 597 S.W.2d 616, 618–20 (Ky. 1980) (finding surveillance photographs properly authenticated when the store owner identified the photos as a fair and accurate representation of his store; explained how the cameras operated; and testified that he removed the film from the camera, sent it to the installer, and received the pictures in due course).

18

Considering that Hill never objected to Jones's authentication of the videos as inadequate, we are unable to say that playing the three videos at trial resulted in palpable error. Rather, we find Jones's testimony as a witness to the event sufficiently authenticated the videos for purposes of KRE 901(b)(1). We note that during Snipes' testimony, she also authenticated the videos as an accurate depiction of the fight that she witnessed between Hill and Jones on the date in question.

Lastly, Hill claims, in a cursory paragraph, that his Sixth Amendment right to confront and cross examine the maker of the videos was violated. As Hill likewise failed to preserve this issue, we are limited to reviewing it for RCr 10.26 palpable error. The Confrontation Clause only applies to hearsay, which are out-of-court statements offered to prove the truth of the matter asserted. KRE 801(c). A statement is defined in part as "nonverbal conduct of a person, if it is intended by the person as an assertion." KRE 801(a)(2); Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.05(4) (4th ed. 2003) (examples of non-verbal conduct that is assertive include nodding one's head "yes," shaking one's head "no," shrugging one's shoulders "I don't know," pointing North to indicate direction, cupping one's hand behind the ear to indicate one cannot hear, pointing to identify a person).

Hill's conduct was not intended as an assertion, and thus the videos were not hearsay. *See e.g. Harwell v. Commonwealth,* 2009-SC-0333-MR, 2011 WL 1103112, at *9 (Ky. Mar. 24, 2011) (citing *Davis v. Civil Serv. Comm'n of the City of Philadelphia,* 820 A.2d 874, 879 n.3 (Pa. Comm. Ct. 2003) (holding a

19

surveillance videotape of a store showing defendant stealing was not hearsay "because nonverbal conduct of a person is only hearsay if it is intended by the person as an assertion."); *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788, 794 (W.Va. 1995) (holding a surveillance videotape of a plaintiff was not a "statement" and thus was not hearsay). In addition, Hill had the opportunity to cross examine Jones concerning his authentication of the videos, including his recollection and account of events depicted on the video. Accordingly, no Sixth Amendment violation occurred, and certainly no palpable error resulted.

### E. No double jeopardy violation occurred.

The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. Similarly, Section 13 of the Kentucky Constitution ensures no person shall "be twice put in jeopardy of his life or limb" for the same offense. *See Commonwealth v. Burge,* 947 S.W.2d 805, 809 (Ky.1996). Hill asserts that his convictions for fourth-degree assault and retaliating against a participant in a legal process led to a constitutional double jeopardy violation under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Hill further contends that his convictions violated KRS 505.020, which sets out our statutory protections against being prosecuted for multiple offenses arising from a single course of conduct. Although Hill did not preserve his double jeopardy claim at trial, "the constitutional protection against double jeopardy is not waived by failing to object at the trial level." *Kiper v. Commonwealth,* 399 S.W.3d 736, 740 (Ky.

20

2012). Accordingly, Hill's constitutional double jeopardy argument is properly raised for our review. We will review his unpreserved statutory double jeopardy claim for palpable error under RCr 10.26. *Id.*

Hill contends that his conviction for fourth-degree assault required the jury to make a factual finding that is inconsistent with his conviction for retaliating against a participant in a legal process. That is, he claims that once the jury found him guilty of retaliating against a participant in a legal process, it was obligated to find him guilty of fourth-degree assault as both instructions required the jury to find that he struck Jones with his fists or feet. Hill avers that he was placed in double jeopardy when a single, continuous course of conduct – his fight with Jones – resulted in two convictions under the jury instructions, as the act of fourth-degree assault is wholly included in the act of retaliating against a participant in a legal process.

KRS 505.020(l)(b) provides that out of a single course of conduct, a defendant "may not ... be convicted of more than one (1) offense when: ... (b) Inconsistent findings of fact are required to establish the commission of the offenses[.]" KRS 525.020 codifies the *Blockburger* test, by which the constitutional standard of double jeopardy must be evaluated. The *Blockburger* court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. Pursuant to this test, "[a] defendant is put in double jeopardy when he is convicted of two

21

crimes with identical elements, or where one is simply a lesser-included offense of the other." *Turner v. Commonwealth,* 345 S.W.3d 844, 847 (Ky. 2011).

Here, no double jeopardy violation occurred because a conviction under both charges does not violate the *Blockburger* same-elements test, "which is the test we typically employ to determine if multiple convictions have been improperly imposed for the same conduct in violation of the double jeopardy clause of the Fifth Amendment." *Kiper v. Commonwealth,* 399 S.W.3d 736, 742 (Ky. 2012) (citing *Burge,* 947 S.W.2d at 811). In *Kiper,* we clarified the double jeopardy limitation contained in KRS 505.020(1)(b) and held that this provision was violated for a conviction of both attempted murder and first-degree assault of the same victim because the attempted murder conviction required the jury to find that the defendant specifically intended to kill the victim during the attack while the first-degree assault conviction required a finding that he simultaneously acted with the specific intent, not to kill but merely to injure the victim. *Id.* The *Kiper* court explained that because the defendant could not shoot to kill his victim and simultaneously shoot to cause serious injury, but not death, to his victim, the convictions mandated inconsistent findings of fact which could not withstand a double jeopardy challenge under KRS 505.020(l)(b). *Id.*

In Hill's case, no violation of the constitutional protections against double jeopardy have occurred under *Blockburger* and *Burge.* A comparison of the elements of fourth-degree assault and retaliating against a participant in a legal process discloses that fourth-degree assault requires proof that Hill

22

intentionally caused physical injury to Jones by striking him with his fists and/or feet, and that Hill was not entitled to act in self-defense, while retaliating against a participant in a legal process requires proof that Hill struck Jones with his fists and feet because he believed Jones was going to provide police information about Hill and Hill's conduct related to Jones being a potential witness. Thus, fourth-degree assault requires different elements of physical injury and no entitlement to self-defense, whereas retaliation requires a finding that Hill acted because he believed Jones was going to disclose to police Hill's involvement in a legal process. Since each statute requires proof of an additional fact which the other does not, the retaliation conviction does not absorb into the fourth-degree assault conviction. Therefore, no constitutional double jeopardy violation exists.

Nor does a statutory double jeopardy violation exist since a conviction for both fourth-degree assault and retaliating against a participant in a legal process does not violate the aspect of double jeopardy defined by KRS 505.020(1)(b)'s inconsistent findings of fact test. Contrary to Hill's assertion, the jury was not obligated to find Hill guilty of fourth-degree assault once it found him guilty of retaliation simply because both charges required the jury to find that Hill struck Jones with his fists and feet. A jury could have found that Hill met the elements of both charges, or just one, without any inconsistency in the facts. Therefore, no violation of KRS 505.020 occurred.

### III. CONCLUSION

23

For the foregoing reasons, the judgment of the McCracken Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Assistant Public Advocate
Department of Public Advocacy

Kayla Danielle Deatherage
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General